# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **CHRISTOPHER LEE SIEWERT** | **CIVIL ACTION** |
| **VERSUS** | **NO. 15-476-RLB[1]** |
| **CAROLYN COLVIN, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION** | |

## RULING AND ORDER ON SOCIAL SECURITY APPEAL

Plaintiff, Christopher Lee Siewert (Plaintiff), seeks judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) pursuant to 42 U.S.C. § 405(g) denying Plaintiff's applications for Supplemental Security Income and Disability Insurance Benefits under the Social Security Act. (R. Doc. 1).  Having found all of the procedural prerequisites met (Tr. 505-09), the Court has properly reviewed Plaintiff's appeal. *See* 42 U.S.C. § 405(g); 20 C.F.R. § 404.981 ("The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you . . . file an action in Federal district court . . . .").  For the reasons given below, the Court **ORDERS** that the decision of the Commissioner be **AFFIRMED** and Plaintiff's appeal be **DISMISSED with prejudice**.

---

[1] Because both parties consented to proceed before a United States Magistrate Judge (R. Doc. 10), the case was transferred to this Court for all further proceedings and entry of judgment pursuant to 28 U.S.C. § 636(c)(1).

## I.       PROCEDURAL HISTORY

Plaintiff filed applications for disability insurance benefits and supplemental security income alleging that he became disabled on July 4, 2004 because of mental impairments — depression, dissociative disorder, anxiety and obsessive compulsive disorder. (Tr. 33, 91, 113-14).  Plaintiff's applications were initially denied (Tr. 33) in May of 2006.  This began a lengthy administrative process consisting of 5 hearings (Tr. 409(A)-22, 423-76, 477-504, 541-77, 604-616); multiple Administrative Law Judge (ALJ) decisions (Tr. 17-27, 376-86, 581-96, 637-38); and eventually remands by the Appeals Council (Tr. 395-96) and, most recently, by this Court on August 19, 2011. *See* Final Judgment and Order of Remand at 1-2, *Siewert v. Astrue*, No. 10-cv-794-DLD (M.D. La. Aug. 19, 2011), ECF No. 18 (ordering remand under Sentence Four at the Commissioner's request).

Following judicial remand, an ALJ convened a hearing on July 15, 2014 (Tr. 541-77), before issuing the Commissioner's latest unfavorable decision on September 16, 2014 — the subject of the instant appeal. (Tr. 581-96).  Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on May 21, 2015. (Tr. 505-09).  The ALJ's September 16, 2014 decision rested as the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. *See* 20 C.F.R. § 404.981.

## II.      STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "'more than a mere scintilla. It

means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938) (defining "substantial evidence" in the context of the National Labor Relations Act, 29 U.S.C. § 160(e)). The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (quotations omitted). Conflicts in the evidence are for the Commissioner "and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not reweigh the evidence, try the case de novo, or substitute its own judgment for that of the Commissioner even if it finds that the evidence preponderates against the Commissioner's decision. *See, e.g., Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994) ("This is so because substantial evidence is less than a preponderance but more than a scintilla."); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988) ("we must carefully scrutinize the record to determine if, in fact, such evidence is present; at the same time, however, we may neither reweigh the evidence in the record nor substitute our judgment for the Secretary's"); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (same).

If the Commissioner's decision is supported by substantial evidence, then it is conclusive and must be upheld. *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). If the Commissioner fails to apply the correct legal standards, or fails to provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987).

**III.    ALJ'S DETERMINATION**

  In determining disability, the Commissioner (through an ALJ) works through a five-step sequential evaluation process.  *See* 20 C.F.R. § 404.1520(a)(4).  The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability.  If the claimant is successful in sustaining his or her burden at each of the first four steps, the burden shifts to the Commissioner at step five. *See Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (explaining the five-step process).  First, the claimant must prove he is not currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  Second, the claimant must prove his or her impairment is "severe" in that it "significantly limits your physical or mental ability to do basic work activities . . . ." 20 C.F.R. § 404.1520(c).  At step three the ALJ must conclude the claimant is disabled if he proves that his or her impairments meet or are medically equivalent to one of the impairments contained in the Listing of Impairments. *See* 20 C.F.R. § 404.1520(d) (step three of sequential process); 20 C.F.R. pt. 404, subpt. P, app'x 1 (Listing of Impairments).  Fourth, the claimant bears the burden of proving he is incapable of meeting the physical and mental demands of his or her past relevant work.  20 C.F.R. § 404.1520(f).

  If the claimant is successful at all four of the preceding steps then the burden shifts to the Commissioner to prove, considering the claimant's residual functional capacity, age, education and past work experience, that he or she is capable of performing other work.  20 C.F.R § 404.1520(g)(1).  If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he or she cannot, in fact, perform that work. *Muse*, 925 F.2d at 789.

  Here, after a thorough review of the entire administrative record, the ALJ made the following determinations:

1.      Plaintiff met the insured status requirements through December 31, 2009.

2.      Plaintiff did not engage in substantial gainful activity after July 5, 2004.

3.      Plaintiff suffered from the following severe impairments: depression and chronic obstructive pulmonary disease.

4.      Plaintiff did not meet or medically equal a listing — specifically, Listing 3.00 (Respiratory Disorders) and Listing 12.00 (Mental Disorders).

5.      Plaintiff retained the residual functional capacity (RFC) to perform a full range of work at all exertional levels, but with the following non-exertional limitations: no exposure to concentrated pulmonary irritants; no complex or detailed work, but only simple 1-, 2-, and 3-step instructions; no more than occasional work with others, i.e., work more with things rather than people.

6.      Plaintiff was unable to perform any past relevant work as a hairdresser and cosmetologist.

7.      Plaintiff was a younger individual.

8.      Plaintiff had a limited education, but was capable of communicating in English.

9.      The transferability of job skills was not material to the ultimate determination of disability.

10.     Considering Plaintiff's age, education, work experience and RFC, there were unskilled jobs existing in significant numbers in the national economy that Plaintiff could perform, including: Dishwasher and Apparel Stock Checker.

11.     Plaintiff had not met the Social Security Act's definition of disability at any time between his alleged onset date of July 5, 2004 and the ALJ's September 16, 2014 decision.

(Tr. 584-96).

## IV.    DISCUSSION

Plaintiff filed his Memorandum in Support of Appeal (R. Doc. 16) on March 24, 2016, raising several assignments of error, which he believes warrant remand.

First, Plaintiff argues that remand is warranted because the ALJ failed to comply with this Court's August 19, 2011 Order of judicial remand, Final Judgment and Order of Remand at

1, *Siewert v. Astrue*, No. 10-cv-794-DLD (M.D. La. Aug. 19, 2011), ECF No. 18, requiring the Commissioner to subpoena the medical records of Plaintiff's treating psychiatrist, Dr. James Sigrist. (R. Doc. 16 at 9-10).  Next, Plaintiff claims that the ALJ erred at Step 3 by finding Plaintiff did not meet or medically equal a Listing. (R. Doc. 16 at 11).  According to Plaintiff, "the record supports a finding that [his] mental impairments clearly meet the criteria" of Listing 12.04 (Affective Disorders) and Listing 12.08 (Personality Disorders). (R. Doc. 16 at 11-15). Third, Plaintiff insists that the ALJ "failed to properly consider the opinions and medical source statements of Dr. Morrison and Dr. Michaels" in determining Plaintiff's residual functional capacity. (R. Doc. 16 at 15-18).  Finally, Plaintiff argues that the ALJ failed to incorporate probative testimony given by the Vocational Expert (VE) and otherwise posed insufficient hypotheticals to the VE during the hearing. (R. Doc. 16 at 18-19).  Plaintiff suggests the hypotheticals were deficient because they omitted limitations supported by the record. (R. Doc. 16 at 18).

In response, the Commissioner first asserts that the ALJ fully and fairly developed the record, despite the absence of Dr. Sigrist's medical records.  Moreover, Plaintiff is unable to show any prejudice resulting from the ALJ's failure to issue a subpoena for Dr. Sigrist's records. (R. Doc. 18 at 4-8).  Second, the Commissioner argues that the "ALJ properly found that Plaintiff's mental impairments were not presumptively disabling." (R. Doc. 18 at 9).  Next, the Commissioner suggests that the ALJ "properly explained why he weighed the opinions from Dr. Morrison [and] Dr. Michels . . . as he did." (R. Doc. 18 at 12).  According to Defendant, "Plaintiff merely seeks to have the court reweigh the evidence"—something it cannot do on judicial review. (R. Doc. 18 at 12-13).  Finally, the Commissioner rejects Plaintiff's assertion

that the ALJ posed inadequate hypotheticals to the VE or erred in relying on the VE's testimony. (R. Doc. 18 at 13-14).

The Court has considered Plaintiff's assignments of error in light of the parties' arguments, the record as a whole and the applicable law, but finds none of the alleged errors warrant reversal or remand.

### A.    Failure to Follow Remand Order

Plaintiff's first assignment of error is that the ALJ failed to comply with this Court's remand Order directing the Commissioner to subpoena the medical records of Plaintiff's treating psychiatrist, Dr. James Sigrist.  Dr. Sigrist allegedly treated Plaintiff from January of 2004 until sometime in 2008. (Tr. 142-43).  During the administrative proceedings occurring before the Court's remand order, Plaintiff's attorney explained that he had requested Dr. Sigrist's treatment records on multiple occasions and otherwise attempted to obtain the records to no avail. (Tr. 397, 447-48).  In response his records requests, Dr. Sigrist instead provided Plaintiff's attorney with a medical source statement dated July 21, 2008, which detailed his treatment of Plaintiff and Plaintiff's abilities. (Tr. 142-43).  Dr. Sigrist's July 21, 2008 medical source statement (MSS) is the only record evidence attributable to his treatment of Plaintiff.

Following the August 19, 2011 judicial remand, the Commissioner unsuccessfully tried to obtain Dr. Sigrist's treatment records, as required by the Court's Order.  According to a February 24, 2012 notation in the administrative transcript, the Commissioner "tried to get the records [but] the address is [not accurate] and the phone number is [not correct]." (Tr. 854).  When the Commissioner informed Plaintiff's attorney of these roadblocks, the attorney responded that "He [thought] the doctor [was] dead." (Tr. 854).  After that, no further attempts were made to obtain Dr. Sigrist's treatment notes.

The agency must comply with the federal court's directives on remand. *Sullivan v. Hudson*, 490 U.S. 877, 886 (1989) ("Deviation from the court's remand order in the subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review."). Like other errors, however, an ALJ's failure to comply with a court's remand order is subject to harmless error analysis. *See Dominguez v. Colvin*, 2014 WL 4904735, at *6 (D. Ariz. Sept. 30, 2014) (harmless error analysis applies to ALJ's failure to follow court's remand order); *Beisel v. Colvin*, 2013 WL 4095204, at *6 (D. Or. Aug. 8, 2013) (applying harmless error analysis where ALJ failed to comply with judicial remand order).

Here, the Court's remand order directed the ALJ subpoena Dr. Sigrist's treatment notes, in order to further develop the record regarding Plaintiff's mental impairments.  Indeed, the remand order likewise instructed the ALJ to order a consultative psychiatric examination to determine the extent of Plaintiff's mental impairments.

Upon remand, the agency requested Dr. Sigrist's medical records using the only available address and attempted to contact Dr. Sigrist at the only phone number found in the record. (Tr. 854).  Both avenues proved fruitless, as neither the address nor phone number were current.  The agency notified Plaintiff's counsel that Dr. Sigrist's address and phone number were both incorrect.  At that time, counsel acknowledged that he had been unable to retrieve the same records from Dr. Sigrist (for a number of years) and informed the agency of his belief that Dr. Sigrist had passed away. (Tr. 854); (Tr. 397) (January 27, 2009 letter from Plaintiff's counsel to the SSA, acknowledging counsel had already made "numerous written and telephone requests with Dr. Sigrist's office for [Plaintiff's] medical records" but "never received any reply other than a 07/21/2008 [medical source statement]").  The record further indicates that Dr. Sigrist was "suspended from practice or was otherwise inactive" as of 2008. (Tr. 397-99, 588).

Contrary to Plaintiff's argument, the ALJ made a reasonable effort to obtain Dr. Sigrist's medical records and did not err in failing to issue a formal subpoena.  The agency's written request for the records was sent to Dr. Sigrist's only known address in 2012, which was no longer valid.  By that time, Dr. Sigrist had not been in practice since 2008 and possibly had since passed away.  Consequently, there was no doctor or other entity (e.g., medical practice, clinic or hospital) available for the Commissioner to contact for a correct mailing address.  As such, any subpoena issued to the same invalid address would have been futile.  For this reason, the ALJ did not err in failing to issue a subpoena to Dr. Sigrist.

But even assuming the ALJ erred in failing to issue the subpoena or otherwise discounting Dr. Sigrist's opinion, in part, as unsupported by treatment notes, reversal is only warranted if Plaintiff can show that he "could and would have adduced evidence" from Dr. Sigrist's records that "might have altered the result." *Kane v. Heckler*, 731 F.3d 1216, 1220 (5th Cir. 1984).  Having reviewed the record evidence, the Court finds no reversible error, as any treatment notes would not have altered the ALJ's decision to discount Dr. Sigrist's opinion — a decision substantially supported by the evidence of record.

As the ALJ explained, Dr. Sigrist's opinion (or MSS) is inconsistent with the remaining record evidence, including treatment records from other treating psychiatrists and examining sources.  In his July 21, 2008 medical source statement, Dr. Sigrist explained that Plaintiff suffered from Dissociative Identity Disorder NOS[2] resulting in the manifestation of multiple personalities — Sabrina, a "homicidal . . . protector"; and Samantha, "a nurturing guide . . . who uses an elevated vocabulary that Mr. Siewert often does not understand." (Tr. 142-43).

---

[2] "The defining feature of dissociative identity disorder is the presence of two or more distinct personality states or an experience of possession." American Psychiatric Association: *Diagnostic and Statistical Manual of Mental Disorders* 292 (DSM-V) (Michael B. First, M.D., et al. eds. 5th ed. 2013).

However, later treatment records from other sources do not mention dissociative disorder as an observed or current diagnosis. (Tr. 1033, 1036) (a July 19, 2011 treatment record indicates only one past episode of "disassociating," as reported by Plaintiff); (Tr. 1038) ("Axis II – No Personality Disorder Diagnosis" on August 31, 2010); (Tr. 978-81) (Bipolar I Disorder (most recent episode – depressed), Obsessive Compulsive Disorder, Post-Traumatic Stress Disorder and Polysubstance Dependence were diagnosed following a psychological assessment on August 12, 2010).

Dr. Kenneth Todd treated Plaintiff on a regular and consistent basis between 2009 and 2014 for mental impairments without ever diagnosing Dissociative Identity Disorder. (Tr. 1047-55). Throughout his treatment, Dr. Todd reported that Plaintiff was "doing pretty good" (Tr. 1051, 1054) or "good" (Tr. 1054), "doing well" (Tr. 1054), or "seem[ed] to be doing just fine" (Tr. 1047). In contrast to Dr. Todd's 2009 through 2014 treatment records, Dr. Sigrist described Plaintiff as being "able to function marginally at best" in 2008. (Tr. 143).

Dr. Sigrist's opinion that Plaintiff qualified for disability benefits (Tr. 143) was also contradicted by Dr. Fred Tuton's opinion that Plaintiff was "able to understand, remember and carry out simple/detailed instructions" and had the "ability to sustain effort and persist at a normal pace over the course of a routine 40 hour work week." (Tr. 324).

As such, substantial evidence supports the ALJ's decision to discount Dr. Sigrist's medical source statement as inconsistent with the remaining medical evidence of record.

The ALJ also discounted Dr. Sigrist's medical opinion because his treatment of Plaintiff was "sporadic" at best. According to Dr. Sigrist, after he began treating Plaintiff in 2004, he "discontinued [his] practice in Baton Rouge and saw patients only in New Orleans" beginning in 2005. (Tr. 142). Dr. Sigrist admitted that his "contact with [Plaintiff] since that time" was only

"sporadic" and mostly "by telephone." (Tr. 142).  By 2008, Dr. Sigrist had stopped treating

Plaintiff completely. (Tr. 588, 591).

The sporadic nature of Dr. Sigrist's treatment, alone, was an appropriate basis on which

the ALJ could rely to discount his opinion. *See Sullivan v. Commissioner of Social Security*, 595

F. App'x 502, 507 (6th Cir. 2014) (ALJ properly discounted physicians opinion as claimant's

"treating relationship with [the doctor] was sporadic"); *Cookson v. Colvin*, 111 F. Supp. 3d 142,

152 (D.R.I. 2015) (ALJ properly rejecting physician's opinion based on doctor's infrequent

treatment).

Finally, any treatment records obtained from Dr. Sigrist through subpoena would not

have altered the result.  Dr. Sigrist's opinion was based on his own clinical observations made

during his treatment of Plaintiff.  The ALJ largely discounted that opinion as inconsistent with

the remaining record and based on an infrequent treating relationship.  With that in mind, the

actual treatment records upon which Dr. Sigrist based his opinion would likewise be rejected by

the ALJ as infrequent and inconsistent with the remaining evidence.  As such, Plaintiff has not

shown any prejudice resulting from the ALJ's failure to subpoena or otherwise obtain Dr.

Sigrist's treatment records.  And for the reasons given above, substantial evidence supports the

ALJ's decision to discount Dr. Sigrist's opinion.

### B.    Listing 12.04 and Listing 12.08

Plaintiff next contends that the ALJ erred in finding he did not meet or medically equal a

listing at Step Three. (R. Doc. 16 at 11).  According to Plaintiff, he clearly meets the criteria of

both Listing 12.04 (Affective Disorders) and Listing 12.08 (Personality Disorders).  However,

Plaintiff's argument is limited to Listing 12.04.  Listing 12.08 is only mentioned briefly and

Plaintiff fails to discuss the Listing's criteria or point to any evidence indicating that Listing

12.08 is met.  As such, the Court only considers whether the ALJ erred in finding Plaintiff's impairments did not meet or medically equal Listing 12.04.[3]

It is Plaintiff's burden to establish that he meets a listing. *See Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991); 20 C.F .R. § 404.1520(d).  The criteria for the listings are demanding and stringent. *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994).  Plaintiff's subjective complaints, without objective medical evidence, are insufficient to establish disability. *See* 20 C.F.R. §§ 404.1508, 404.1528, 404.1529.  Plaintiff must establish all of the criteria of a listing in order to meet it — anything less will not suffice as a matter of law. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).  As discussed below, the Court finds that Plaintiff has failed to establish the criteria required to meet Listing 12.04.

Listing 12.04 details the criteria for disabling "Affective Disorders: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation." 20 C.F.R. pt. 404, subpt. P, app'x 1, § 12.04.  The required level of severity is met when the requirements in both paragraphs A and B are satisfied, or when the requirements in paragraph C are satisfied.  Plaintiff argues that he meets the requirements of paragraphs A and B, which require medical proof of the following:

**(A) Medically documented persistence, either continuous or intermittent, of one of the following:**

> 1. Depressive syndrome characterized by at least four of the following:
>> a. Anhedonia or pervasive loss of interest in almost all activities;
>> b. Appetite disturbance with change in weight;

---

[3] The Court would reach the same conclusion even if Plaintiff had put forth an argument (and pointed to supporting evidence) that Listing 12.08 was met.  The paragraph B criteria found in Listing 12.04, which the Court finds Plaintiff unable to satisfy, is identical to the paragraph B criteria which must be met under Listing 12.08. *See* 20 C.F.R. pt. 404, subpt. P, app'x 1, §§ 12.04(B), 12.08(B).  As such, Plaintiff's inability to satisfy the requirements of paragraph B, which prevents him from meeting Listing 12.04, likewise prevents him from meeting Listing 12.08. *See* 20 C.F.R. pt. 404, subpt. P, app'x 1, § 12.08 (The required level of severity for [Listing 12.08] is met when the requirements in both [paragraphs] A and B are satisfied.").

c. Sleep disturbance;
d. Psychomotor agitation or retardation;
e. Decreased energy;
f. Feelings of guilt or worthlessness;
g. Difficulty concentrating or thinking;
h. Thoughts of suicide;
i. Hallucinations, delusions, or paranoid thinking.

2. Manic syndrome characterized by at least three of the following:
    a. Hyperactivity;
    b. Pressure of speech;
    c. Flight of ideas;
    d. Inflated self-esteem;
    e. Decreased need for sleep;
    f. Easy distractibility;
    g. Involvement in activities that have a high probability of painful consequences which are not recognized;
    h. Hallucinations, delusions or paranoid thinking.

3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes).

**(B) Resulting in at least two of the following:**

1. Marked restriction of activities of daily living.

2. Marked difficulties in maintaining social functioning.

3. Marked difficulties in maintaining concentration, persistence, or pace.

4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. pt. 404, subpt. P. app'x 1, § 12.04(A)-(B).  Here, Plaintiff cannot show that Listing 12.04 is met because the record does not contain evidence sufficient to establish the "marked" limitations required by paragraph B.

Contrary to Plaintiff's claim of "marked" difficulties in maintaining social functioning (paragraph B(2)) and "marked" difficulties in maintaining concentration, persistence or pace (paragraph B(3)), substantial evidence supports the ALJ's finding that Plaintiff had only

"moderate" restrictions in these areas, as well as "mild" restriction of activities of daily living; and "no" extended episodes of decompensation. (Tr. 593).

"Social functioning" refers to a claimant's ability to "interact independently, appropriately, effectively, and on a sustained basis with other individuals." 20 C.F.R. pt. 404, subpt. P, app'x 1, § 12.00(C)(2). The ALJ found Plaintiff was moderately limited in this area. Indeed, the record indicates that Plaintiff's ability to maintain social functioning is limited (Tr. 142, 294), but not "markedly," as Plaintiff argues. For example, Plaintiff reported that he got along "pretty well" with his co-workers and customers at work (Tr. 446), and he even stated: "My boss and I get along well." (Tr. 133). Consistently, Plaintiff reported participating in social groups. (Tr. 131).

Plaintiff told Dr. Fred Tuton that "he does socialize with friends and they enjoy talking together." (Tr. 322). Based on his mental examination of Plaintiff, Dr. Tuton opined that Plaintiff could "relate to others, including supervisors and co-workers." (Tr. 324). Doctors at the Baton Rouge Mental Health Center noted that Plaintiff had a "good support system" of friends and family, and described him "calm" and "cooperative" during examination. (Tr. 980). On September 25, 2007, Dr. Marc Zimmerman completed a Mental Medical Source Statement and consistently indicated that Plaintiff had "no limitations" in the area of "social interaction." (Tr. 330).

In 2011, Plaintiff's treating physician, Dr. Karen Stone, described his behavior as "calm" and "appropriate," and noted his attitude was "cooperative" and "appropriate." (Tr. 970). Dr. Stone reported that Plaintiff went to church occasionally (Tr. 970) and described Plaintiff's "positive relationships" with his "family" and "peers" as one of his "strengths." (Tr. 972). Based on his examination of Plaintiff, Dr. James Van Hook likewise described Plaintiff as making

"adequate eye contact," possessing an "adequate level of social judgment and adaptive skills," and being "able to interact on a 1:1 basis." (Tr. 984).

Finally, a number of state agency psychologists reviewing the record between 2006 and 2011 found Plaintiff either had "no limitations," "no significant limitations" or only "moderate limitations" in social interaction. (Tr. 340, 344, 357, 647, 652). As such, the record contains sufficient evidence to support the ALJ's finding that Plaintiff's ability to maintain social functioning is only moderately limited. (Tr. 593).

"Concentration, persistence, or pace" refers to a claimant's ability to "sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks . . . ." 20 C.F.R. pt. 404, subpt. P, app'x 1, § 12.00(C)(3). "[M]ajor limitations in this area can often be assessed through clinical examination or psychological testing." *Id.* Plaintiff points to three pieces of evidence to demonstrate a marked limitation in his ability to maintain concentration, persistence or pace. (R. Doc. 16 at 14-15).

Plaintiff points to a disability services employee's personal observation that Plaintiff "demonstrated significant difficulty concentrating" during a 2006 interview (Tr. 110), as "perhaps the most compelling evidence" of his marked limitation in this area. (R. Doc. 16 at 15). While the interviewer's comment does support Plaintiff's contention, the remaining record, including the two remaining pieces of evidence Plaintiff relies on, does not.

First, Plaintiff relies on Dr. Fred Tuton's medical report as evidence of "a memory deficit" (R. Doc. 16 at 14), based on Dr. Tuton's statement that Plaintiff could "repeat 3 objects, but only recall 1 out of 3 objects after 5 minutes." (Tr. 323). However, Dr. Tuton nonetheless found Plaintiff's "remote, recent and immediate memory [were] good." (Tr. 323). More importantly, Dr. Tuton opined that Plaintiff had the ability to "maintain attention to perform

simple repetitive tasks" and could "sustain effort and persist at a normal pace over the course of a routine 40 hour week." (Tr. 324).

Plaintiff also relies on Dr. Marc Zimmerman's report as "indicative of marked difficulty in concentration" (R. Doc. 16 at 15) because Dr. Zimmerman noted: "[Plaintiff's] short-term memory, defined as being able to remember three objects for five minutes, may be impaired as he can remember only one." (Tr. 319).  But despite this, Dr. Zimmerman found that Plaintiff demonstrated "adequate attention[,] concentration" and "persistence" for all tasks asked of him during psychological examination. (Tr. 318).  Moreover, Dr. Zimmerman noted the results of the Minnesota Multiphase Personality Inventory-2 (MMPI-2) indicated malingering and left the possibility that Plaintiff was "faking bad." (Tr. 319-20).

As such, the evidence cited by Plaintiff does not cast doubt of the existence of substantial evidence supporting the ALJ's finding of only moderate limitations in maintaining concentration, persistence or pace.  In fact, the reports of Dr. Tuton and Dr. Zimmerman only support the ALJ's conclusion, as does the remaining record.

For example, multiple state agency psychologists found Plaintiff suffered from either "no significant limitations" or only "moderate limitations" in this area. (Tr. 330, 340, 343-44, 647, 652).  Plaintiff's treating physician, Dr. Karen Stone, reported Plaintiff's ability to concentrate as "unimpaired" and his memory as being "intact." (Tr. 972, 1028).  During a routine follow-up in August of 2010, Plaintiff told Dr. Stone that he was "doing well and even obtained a job at J.C. Penny," his "concentration [was] normalizing" and he had noticed an "improvement" in his level of "interest and motivation." (Tr. 976).  Therefore, the Court finds substantial evidence supporting the ALJ's finding that Plaintiff was only moderately limited in his ability to maintain concentration, persistence or pace.

Otherwise, Plaintiff has not challenged the ALJ's findings as to the 2 remaining paragraph B criteria — that Plaintiff had only "mild" restriction of activities of daily living and "no" extended episodes of decompensation. (Tr. 593). Therefore, the Court finds substantial evidence supports the ALJ's finding that Plaintiff's mental impairments did not meet the level of severity required by paragraph B.

A claimant must establish all of the criteria of a listing in order to meet it. *Sullivan*, 493 U.S. at 530. The relevant part of Listing 12.04 requires a claimant to satisfy the requirements of both paragraphs A and B. Because Plaintiff cannot satisfy the requirements of paragraph B, the Court finds substantial evidence supports the ALJ's Step 3 finding that Plaintiff did not meet or medically equal a listing.

### C.      Consideration of Medical Evidence

Plaintiff next argues that the ALJ erred in considering and assigning weight to the various medical opinions found in the record. (R. Doc. 16 at 15-18). The ALJ "is responsible for assessing the medical evidence and determining the claimant's residual functional capacity." *Perez v. Heckler*, 777 F.2d 298, 302 (5th Cir. 1985). Conflicts in the evidence are for the Commissioner "and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). As such, the Court may not reweigh the evidence, *Bowling*, 36 F.3d at 434, and must defer to the ALJ's decision when substantial evidence supports it, *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988).

Plaintiff claims that the ALJ erred in relying on the testimony of medical expert, Dr. Tommy Stiegel, who testified during the 2009 hearing, and by discounting the medical opinions of Dr. Sigrist and consultative examiners, Dr. Ross Michels and Dr. Francine Morrison. (R. Doc. 16 at 15-18); (Tr. 142-43, 477-93, 845-52, 987-90). The Court has already determined that the

ALJ's decision to afford little weight to Dr. Sigrist's medical source statement is supported by substantial evidence and will not revisit the issue.  Otherwise, Plaintiff argues that the ALJ should have given controlling weight to the opinion of consultative examiner, Dr. Francine Morrison, as her "fund of information" regarding Plaintiff's mental history was "greater than that recognized by the ALJ" and her opinion, rendered in March of 2012, was more temporally relevant than that of Dr. Stiegel, who provided testimony in August of 2009.   Plaintiff similarly argues that Dr. Michels' June 29, 2011 opinion is entitled to more weight than Dr. Stiegel's testimony because it was rendered 2 years later.  For the reasons given below, the Court finds the ALJ's weighing of the medical evidence is supported by substantial evidence.

Dr. Morrison performed a psychiatric evaluation of Plaintiff and issued a medical source statement on March 10, 2012. (Tr. 845-52).  In her statement, Dr. Morrison relied almost exclusively on Plaintiff's subjective statements and the July 21, 2008 letter from Dr. Sigrist, who Dr. Morrison described as Plaintiff's "long time psychiatrist." (Tr. 845).  Dr. Morrison however noted that Plaintiff was a "poor/fair historian" and a "very fragile human being" who cried during the entire interview and ask that she not inquire about his past. (Tr. 486-87).  For that reason, she "did not stress him anymore than was necessary" and instead "relied on the letter from his long time psychiatrist, Dr. Sigrist." (Tr. 486).  Based on that information, Dr. Morrison opined that Plaintiff's ability to interact with the public, co-workers and supervisors was "marked[ly] impaired and his ability to respond appropriately to usual work situations was "extreme[ly] impaired." (Tr. 851).

The ALJ rejected Dr. Morrison's 2012 opinion because it relied almost exclusively on Dr. Sigrist's letter, which the ALJ had already determined was inconsistent with the remaining record evidence and based on a sporadic treating relationship that ended in 2008. (Tr. 591).

Because the Court has already found the ALJ appropriately discredited Dr. Sigrist's opinion, the ALJ likewise did not err in discounting Dr. Morrison's opinion, as it largely relied on the medical source statement of Dr. Sigrist.  As the ALJ explained, Dr. Morrison did not otherwise review the remainder of the record evidence, including the treatment records from the physicians actually treating Plaintiff's mental illnesses at the time of her exam. (Tr. 591).  The ALJ likewise did not err in discounting Dr. Morrison's opinion because it ignored Plaintiff's well-documented history of substance abuse and "its possible effects on his functioning and presentation." (Tr. 591).

Finally, the ALJ correctly pointed out that although Dr. Morrison found Plaintiff suffered from marked to extreme limitations in the area of social functioning, she inconsistently assigned a Global Assessment of Functioning (GAF) score of 55, which indicates only "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." American Psychiatric Association: *Diagnostic and Statistical Manual of Mental Disorders* 34 (DSM–IV) (Michael B. First, M.D., et al. eds., 4th ed. 2000).

As such, the Court finds substantial evidence supporting the ALJ's decision to discount the opinion of Dr. Morrison.  Moreover, Plaintiff has not specifically challenged any of the ALJ's reasons for discounting the opinion.  Instead, Plaintiff merely claims that Dr. Morrison knew more about his history than the ALJ realized — a contention unsupported by the record — and argues that opinion should be credited as more recent than others.  Neither argument is persuasive or sufficient to cast doubt on the ALJ's determination.

Dr. Michels performed a physical evaluation of Plaintiff on June 29, 2011, finding no physical abnormalities.  Although Dr. Michels is not a mental health specialist, he opined that

Plaintiff's mental impairments would prevent him from working. (Tr. 990).  Dr. Michels did not review any of Plaintiff's mental health records.  Instead, he relied solely on Plaintiff's subjective statements regarding the severity of his mental impairments in forming this opinion. (Tr. 987) (listing the records reviewed prior to the exam).  The ALJ seemingly adopted Dr. Michels' opinion as to Plaintiff's physical abilities only. (Tr. 594).

Plaintiff's sole argument on judicial review is that Dr. Michels' opinion as to Plaintiff's mental limitations should have been adopted simply because the opinion was more recent than others in the record. (R. Doc. 16 at 17-18).  This argument is, again, not persuasive.  As the ALJ pointed out, Dr. Kenneth Todd, who began treating Plaintiff for mental impairments in 2009, reported that Plaintiff was "doing just fine" as recent as June 30, 2014 — years after he was examined by both Dr. Michels and Dr. Morrison.  (Tr. 1047).  In fact, Dr. Todd's treatment records consistently describe Plaintiff as doing "well," "good," "pretty good" and "okay" between 2010 and 2014, during the time Dr. Morrison and Dr. Michels rendered their opinions. (Tr. 1047, 1051, 1052, 1053, 1054).  As such, the ALJ's decision to discount Dr. Michels' opinion as to Plaintiff's mental impairments is supported by substantial evidence.

Contrary to Plaintiff's contention, the ALJ did not give controlling weight to Dr. Stiegel. Instead, the ALJ assigned "significant weight" to the opinion of Plaintiff's treating psychiatrist, Dr. Kenneth Todd — a finding not challenged by Plaintiff.  The ALJ only credited Dr. Stiegel's testimony to the extent he opined that Plaintiff could work, despite his mental impairments, if he remained sober. (Tr. 483, 484, 487, 592).  As such, Plaintiff's argument does not warrant remand or cast doubt on the existence of substantial evidence supporting the ALJ's weighing of the medical opinions.

**D.      Reliance on Vocational Expert Testimony**

At the final step of the evaluation process, the ALJ found Plaintiff was capable of performing other work consistent with the residual functional capacity finding made by the ALJ. To make this determination, the ALJ relied on the testimony of a vocational expert (VE) who testified that Plaintiff could perform the jobs of dishwasher and apparel stock checker given his age, education, past work experience and the residual functional capacity, eventually adopted by the ALJ. (Tr. 573-74).

Plaintiff argues this finding was in error as the ALJ ignored the VE's later testimony that "a high level of absenteeism" would prevent the performance of these jobs. (R. Doc. 16 at 18) (citing Tr. 574).  Plaintiff's argument is not persuasive.  While the VE did provide that opinion in response to a later hypothetical posed by the ALJ, the limitations presented in that hypothetical did not become part of the RFC. (Tr. 574) (hypothetical assuming Plaintiff's depressive symptoms would cause excessive and unpredictable absences from work); (Tr. 586) (RFC eventually adopted by the ALJ).

The ALJ is not bound by the VE's testimony based on hypothetical limitations that the ALJ ultimately rejected as unsupported by the record. *See Owens v. Heckler*, 770 F.2d 1276, 1282 (5th Cir. 1985) (ALJ did not err in rejecting a portion of the VE's testimony that was "based on a hypothetical question composed of assumptions subsequently found unsupported by medical evidence").  As such, this part of the VE's testimony is immaterial and the ALJ did not make any error in failing to adopt it.

Finally, Plaintiff claims that the ALJ posed deficient hypotheticals to the VE, as none included the "marked" and "extreme" limitations found by Dr. Morrison. (R. Doc. 16 at 18-19). The ALJ did not credit Dr. Morrison's opinion as to Plaintiff's mental limitations (Tr. 591, 845-

52), and the Court has already determined that substantial evidence supports the ALJ's weighing of Dr. Morrison's opinion. The ALJ made no error in excluding limitations from his hypotheticals that were not supported by the evidence of record. *See, e.g.*, *Masterson v. Barnhart*, 309 F.3d 267, 273-74 (5th Cir. 2002) (rejecting argument that ALJ relied on VE's answers to "improper hypothetical questions" where hypotheticals incorporated all impairments recognized by ALJ and court found ALJ's decision supported by substantial evidence). As such, the ALJ's failure to incorporate the limitations found by Dr. Morrison into his hypotheticals to the VE was not in error and the ALJ's reliance on the VE's testimony is supported by substantial evidence.

## V.      CONCLUSION

For the reasons discussed above, the Court **ORDERS** that the decision of the Commissioner be **AFFIRMED** and Plaintiff's appeal be **DISMISSED with prejudice**.

Signed in Baton Rouge, Louisiana, on December 29, 2016.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**